John T. DAVIS, Plaintiff–Appellant,

v.

ILLINOIS CENTRAL RAILROAD CO., Defendant–Appellee.

No. 90–1738
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1991.

Paul Snow, Paul Snow & Associates, Jackson, Miss., for plaintiff-appellant.

Charles T. Ozier, Clifford K. Bailey, III, Wise, Carter, Child & Caraway, Jackson, Miss., for defendant-appellee.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

In this diversity case, John T. Davis sued the Illinois Central Railroad Company for injuries he sustained when he fell from a railroad trestle or bridge after tripping over a spike left by a company employee. The district court granted the defendant's motion for summary judgment, concluding that since Davis had failed to provide any evidence of willful or wanton conduct, Illinois Central could not be held liable under Mississippi law. We affirm.

Late one Friday night Davis and his friend Todd Winters left their college dormitory in Winters's truck and headed for a sandbar along the Bowie River, where they planned to meet other students to build a bonfire. Davis had never before been to the sandbar. On the way, the two men stopped at a local bar, where they drank beer and played pool for about forty-five minutes.

Winters parked the truck in an unlit area near the south end of the railroad bridge, and the men headed for the sandbar. The company had posted a "no trespassing" sign on the bridge, but Davis testified that he had not seen it. Holding a flashlight to illuminate the path, Winters led the way north across the bridge and down the hill to the sandbar.

After about an hour, Davis and Winters left the sandbar. As they crossed back over the dark trestle, Davis tripped on a spike extending about three or four inches upward from a railroad tie. He plummeted off the east side of the bridge and landed on the rocks thirty feet below. Because of this fall, Davis is now paraplegic.

In his deposition, Davis did not remember whether Winters was using the flashlight at the time of the accident. Davis admitted that the spike was neither hidden nor concealed, except by the cover of darkness. He also conceded that he was not on the trestle for any business purpose and that the railroad derived no benefit from his presence there. Finally, he admitted that the railroad had not given him verbal or written permission to use the trestle.

*Summary Judgment Standard of Review*

In reviewing a grant of summary judgment, we use the same standard of review used by the district court. *Netto v. Amtrak*, 863 F.2d 1210, 1212 (5th Cir.1989). To support summary judgment, the evidence, including affidavits, depositions, answers to interrogatories, and admissions on file, must demonstrate that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lowery v. Illinois Cent. Gulf R.R. Co.,* 891 F.2d 1187, 1190 (5th Cir.1990); *Netto,* 863 F.2d at 1212. Under this standard, we consider the evidence "in the light most favorable to the party resisting the motion." *Trevino v. Celanese Corp.,* 701 F.2d 397, 407 (5th Cir.1983). We review questions of law de novo. *Lowery,* 891 F.2d at 1190; *USX Corp. v. Tanenbaum,* 868 F.2d 1455, 1457 (5th Cir.1989).

■ Federal Rule of Civil Procedure 56(c) mandates summary judgment if a party fails to establish the existence of an element essential to its case and on which it has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273–75 (1986); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988). Like the district court, we find that summary judgment is appropriate because Davis has failed to provide any evidence of the kind of willful or wanton conduct required to hold the railroad liable for his injuries.

*Status of the Plaintiff: Trespasser or Licensee?*

■ The district court appropriately applied Mississippi law, as required by *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Mississippi rigidly adheres to the common-law distinctions between trespassers, licensees, and invitees in determining the duties of landowners toward persons entering on their property. *See Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.,* 518 So.2d 646, 648 (Miss. 1988); *Adams v. Fred's Dollar Store,* 497 So.2d 1097, 1102 (Miss.1986).

Under Mississippi law, a trespasser is a person who enters the property of another "without license, invitation or other right." *Kelley v. Sportsmen's Speedway, Inc.,* 224 Miss. 632, 644, 80 So.2d 785, 791 (1955). A licensee, in contrast, enters the property of another "pursuant to the license or implied permission of the owner" but enters for the "convenience, pleasure or benefit" of the licensee. *Hoffman v. Planters Gin Co.,* 358 So.2d 1008, 1011 (Miss.1978). Finally, an invitee "goes on the premises of another in answer to the express or implied invitation of the owner ... or for their mutual advantage." *Lucas v. Miss. Housing Authority # 8,* 441 So.2d 101, 103 (Miss.1983).

Both parties agree that Davis was not an invitee when he crossed the railroad's trestle. Davis asserts that he was a licensee because the trestle was part of a well-defined pathway that the railroad knew the public used to get to the sandbar. The railroad contends that Davis was a trespasser because the railroad had posted a "no trespassing" sign and railroad employees consistently warned people to keep off the trestle.

Viewing the facts in the light most favorable to the nonmovant, we assume that Davis was a licensee on the trestle. In determining the railroad's duty to Davis, however, we believe that this assumption makes no difference. Whether Davis was a trespasser or a licensee, the railroad's duty to him was the same—to refrain from willfully or wantonly injuring him. *Adams,* 497 So.2d at 1101; *Illinois Cent. Gulf R.R. v. Burns,* 396 So.2d 637, 640 (Miss.1981); *see Hughes v. Star Homes, Inc.,* 379 So.2d 301, 304 (Miss.1980).

*The Active–Conduct Exception*

■ The Mississippi Supreme Court has recognized an exception to the rule governing a landowner's duty to a licensee:

A landowner owes a licensee the bare duty to refrain from willfully or wantonly injuring him. There is one recognized exception in that ordinary reasonable care is required where the landowner engages in active conduct and the plaintiff's presence is known to him. This exception is not applicable where the licensee is injured as a result of the condition of the premises, or passive negligence.

*Lucas,* 518 So.2d at 648 (citations omitted). This active-conduct exception is inapplicable in this case, however, because Davis presented no evidence that the railroad was engaged in active conduct at the time of his fall.

A spike extending from a railroad tie on a remote trestle near midnight has all the earmarks of a condition of the premises. Yet Davis argues that leaving the spike should be considered active instead of passive conduct because the railroad acted affirmatively in creating the situation that resulted in the injury. We find no authority in Mississippi law for this interpretation.

In a recent Mississippi case with analogous facts, a landowner who intended to use a concrete block as the base for a light pole left the block in a shopping center parking lot. See Adams v. Fred's Dollar Store, 497 So.2d 1097 (Miss.1986). Intending to turn her car around, the plaintiff drove into the parking lot at night, when the lot was dark and all stores were closed. She ran into the concrete block and was injured. Although the lot was posted with a "no trespassing" sign, the plaintiff said that she had not seen it.

Because the evidence suggested that other people had used the lot to turn around, the Mississippi Supreme Court assumed that the plaintiff was a licensee with the landowner's implied permission to use the property. In granting summary judgment for the landowner, the court refused to apply the active-conduct exception: "This exception has no application where the licensee is injured as a result of the condition of the premises, or passive negligence. Any negligence here was passive at most, and thus does not fall within the exception." Adams, 497 So.2d at 1101 (citations omitted).

Furthermore, the court concluded that the concrete block did not constitute a trap, a hidden peril, or a concealed pitfall. Id. In discussing this conclusion, the court explained:

> The block was visible by day. It stood above ground and was open and obvious. There was no misleading information. Darkness is the only circumstance to which [the plaintiff] can point as establishing this block as a trap. Darkness alone did not make this otherwise obvious danger hidden.

Id. at 1101–02.

The cases on which Davis relies are distinguishable. In King v. Dudley, 286 So.2d 814 (Miss.1973), the plaintiff was an invitee, not a licensee. The defendant's employee had left a load of pulpwood suspended from a hoisting machine while he stepped away momentarily to assist another employee. Id. at 815. The wood fell on the plaintiff and killed him. Id. Applying a standard of ordinary reasonable care— the duty that a landowner owes an invitee—the court held that the plaintiff had created a jury issue on the defendant's negligence. Id. at 816; see Lucas, 518 So.2d at 648. Since the plaintiff in the present case is a licensee and not an invitee, King is inapplicable.

Two other cases on which Davis relies involve licensees. Both, however, are distinguishable. See Archie v. Illinois Cent. R.R. Co., 709 F.2d 287 (5th Cir.1983); Hoffman, 358 So.2d 1008 (Miss.1978). In Hoffman, a boy was injured at a cotton gin when his foot fell into an exposed revolving auger. Hoffman, 358 So.2d at 1010. Similarly, in Archie, a boy was injured when he fell into a ditch containing burning crossties. Archie, 709 F.2d at 288–89. In each case, the plaintiff was injured by a continuing activity, as distinguished from a passive condition of the premises. Id. at 289; Hoffman, 358 So.2d at 1012–13.

We believe that revolving metal blades of an auger and piles of burning railroad ties constitute active, continuing hazards that require the application of a simple negligence standard. In contrast, we regard a fixed spike in a railroad tie on a dark, remote trestle as a condition of the premises. The applicable duty, therefore, is to refrain from willfully or wantonly injuring a licensee. Since Davis has produced no evidence of willful or wanton conduct, the district court correctly granted summary judgment in favor of the railroad.

*Gross Negligence*

█ Davis makes a brief alternative argument that even if the applicable standard is willful or wanton negligence, he has produced sufficient evidence of such conduct to create a question for the jury. He contends that the railroad had actual knowledge that people had been using the trestle

and that some of these people had narrowly escaped being hit by a train. Thus, the argument goes, the railroad's failure to act in the face of this known, serious danger constitutes gross negligence.

This argument is frivolous. Even if the railroad knew that people using the trestle were in danger of being hit by a train, we see no connection between this knowledge and any knowledge of the danger that Davis contends caused his injury—the danger of tripping on a spike.

Davis provides only one case as support for his gross negligence argument—*Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So.2d 226 (1962). The facts and issues of *Varner* are extremely divergent from those of the present case. Its only possible relevance is the court's statement of the general rule that "where there is a conflict in the evidence, the question of negligence is for the determination of the jury." *Id.* at 149, 141 So.2d at 232. Since we find no evidence of gross negligence, however, this rule merely supports our conclusion that summary judgment was appropriate.

The judgment of the district court is AFFIRMED.