236 So.2d 733 (1970)
Jennie Lee GORDON
v.
C.H.C. CORPORATION.
No. 45865.
Supreme Court of Mississippi.
June 8, 1970.
J.W. Kellum, Sumner, for appellant.
Brewer, Luckett & Shackelford, Clarksdale, for appellee.
INZER, Justice.
Appellant, Jennie Lee Gordon, brought suit in the Circuit Court of Coahoma County against C.H.C. Corporation seeking to recover damages for the alleged wrongful death of her ten-year old son, Franklin Boyd Gordon. The declaration charged that the defendant corporation owned and operated a motel in the City of Clarksdale known by the trade name "Holiday Inn" and in connection therewith it maintained a swimming pool for its guests. The swimming pool was located less than 100 feet from Highway 61 and the pool was easily accessible to children and of a character that would readily attract them in play. Although six feet deep at one end, there was no lifeguard nor any fence around the pool to prevent any small child from entering the pool. It was charged that while a trespasser on the premises at about 5 p.m. on a clear, dry day, Franklin Boyd Gordon jumped into the deep end of the pool, not knowing and appreciating the danger thereof, and lost his life by drowning. The declaration stated that the cause of action comes within the attractive nuisance doctrine.
The testimony on behalf of appellant established that on the day in question Franklin Gordon and three other boys left Gordon's home to go to the Holiday Inn. The record is not clear as to how fair his home was from the Inn, but apparently it was *734 several blocks away. The other three boys were younger than Franklin. Two were seven years of age and the other was six. While they were standing around the pool a guest of the motel came by and asked Franklin if he could swim. Franklin replied that he could. The guest then told him that the water was deep. Shortly thereafter Franklin removed his shirt and shoes and jumped feet first from the diving board into the pool. He came up laughing and then went down again and never came up. The boys seeing bubbles coming up left to tell Franklin's brother what had happened. Sometime later the body was found and removed from the pool.
At the conclusion of the plaintiff's case the trial court granted a peremptory instruction at the request of the defendant instructing the jury to find for the defendant. A judgment was entered dismissing the suit, hence this appeal.
The only error assigned is that the trial court was in error in granting the peremptory instruction. Appellant argues that the facts in this case bring it within the exception to the general rule that the attractive nuisance doctrine is not applicable to water hazards. It is argued that to this child, as to any other child of such tender age, this swimming pool was a mere death trap. It was a deep body of water left open, unfenced, unguarded, unprotected and unusually attractive, enticing and alluring to a child of tender age. Appellant then says, "Such children are prone to resort to a swimming pool lighted in this manner as much as a mule is a haystack, a dog to a meat house or bees to a sugar kettle. It is just as natural for them to play around such an attractive place as it is for their older brothers to loaf around a sorority house or their grandfathers to respond to a dinner call." While recognizing that modern swimming pools with interior lights in the water are attractive to children, we doubt that they are any more attractive to them than the old "swimming hole" in a creek or an artificial pond in a pasture was to the children of an earlier generation. It is not the attractiveness of the swimming pool or the lights in the water that attract children but the impounded water itself, be it a creek, pond, lake, bar pit or a fancy swimming pool.
In Thompson v. Illinois Central RR., 105 Miss. 636, 63 So. 185 (1913), the railroad company by building a dam across a ditch on its land formed a generally shallow pond or lake covering about 80 acres in the woods about one-half mile from the inhabited part of a nearby town. Boys were in the habit of wading therein and this fact was known to the company's agent. A nine-year old boy while wading therein stepped into a hole and was drowned. This Court held that the railroad company was not liable and among other things stated:
Here we have a generally shallow body of water covering a large area in the woods, a half mile from the inhabited parts of the town, wherein boys waded, and wherein appellant's boy was drowned. We think it must be conceded that this deplorable tragedy could not have been anticipated as probable by the exercise of reasonable forethought, nor could it have been prevented by any reasonable precautions. Of course, one could have anticipated the possibility of this sad event; but we think the danger was comparatively remote. Scattered over the length and breadth of the land are innumerable ponds and lakes, artificial and natural; and occasionally a boy or man loses his life while wading, or bathing, in such body of water. If, as a matter of law, the owners of fish ponds, mill ponds, gin ponds, and other artificial bodies, wherein it is possible that boys may be drowned, can be held guilty of actionable negligence unless they inclose or guard same, few will be able to maintain these utilities, and to our minds an intolerable condition will be created. (105 Miss. at 651, 63 So. at 186, 187).
Thirty-five years later in Vincent v. Barnhill, 203 Miss. 740, 34 So.2d 363 (1948), a seven year old boy was drowned in a *735 concrete vat filled with water and visible from the highway. In reversing the jury verdict in favor of the boy's heirs, this Court pointed out that we had in Thompson, supra, refused to extend the attractive nuisance doctrine to impounded water.
It was also pointed out that although this Court had aligned itself with those courts which had adopted the attractive nuisance doctrine, we had declared our tendency to limit rather than expand its application. We refused to extend the doctrine to cover water hazards and we also refused to import into our jurisdiction any further exception to the general common law of negligence by adopting the so-called "play ground rule" then in effect in a few states.
In McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892 (1965), we affirmed the trial court's action in sustaining a demurrer to a declaration which charged that a six year old boy was drowned in a bar pit on property owned by the City of Laurel. The bar pit had been dug in such a way that the sides were several feet higher than the water level with the east end being flat and easily accessible and approachable by children, but from the opposite side thereto exit could only be made by scaling perpendicular walls. It was also charged that the bar pit was attractive to children and that the defendants knew of the tendency of children, especially boys, to go swimming in the bar pit, and that the condition of the bar pit was deceiving to the average mind, especially an immature one. It was further charged that the bar pit was near several streets and a residential section in the suburban district in and around Laurel where a great number of children lived and sought entertainment. The bar pit was filled with swimming equipment, or floating timbers, upon which boys could float. It had boats and springboards and marine life which was attractive, too, and easily accessible to children. Paths were nearby which were travelled by children, but the defendants failed to fence the bar pit or warn or guard against children being drowned. In our opinion, Justice Brady writing for the Court reviewed a number of cases cited and relied on by both sides and concluded by saying:
We take judicial knowledge of that which is commonly known. There are countless thousands of cattle and fishing ponds, swimming holes, sink holes, creeks, lakes, natural and artificial, swamps, bayous, and other bodies of water, large and small, which dot and cover the farms, forests and open lands of this state. Therefore, to sustain the appellants' contention herein would be tantamount to holding that the owners of land, on which the above named bodies of water are located, are the insurers of the safety of children who might trespass thereon, and therefore could be held liable for the death of a child who, while playing or swimming therein, was drowned. As we have heretofore indicated, such an extension of a rule of law would not only be unjust, but preposterous. Wisdom, the disciple of experience, advocates the extension of a rule of law only so far as reasonable necessity requires. (252 Miss. at 764, 173 So.2d at 903).
It is clear from the foregoing cases that under the law of this state the attractive nuisance doctrine does not extend to swimming pools. However, counsel for appellant urges that the Court should reexamine this holding in the light of Section 339, Restatement of the Law of Torts (2d 1965). This section deals with conditions highly dangerous to trespassing children. In the discussion of this section it is pointed out that there are many dangers such as those of fire and water or falling from a height, which under ordinary conditions may be reasonably expected to be fully understood and appreciated by any child old enough to to be allowed at large. To such conditions the provisions of Section 339, supra, are not applicable in the absence of other factors creating a special risk, such as the fact that the condition is so hidden that its danger is not readily visible or some distractive influence which makes it likely that a child will not discover or appreciate it. *736 The proof in this case shows that Franklin Gordon was an intelligent boy, having completed the fourth grade in school. Certainly he was not too young to appreciate the danger of water. There was nothing hidden or concealed about the danger involved in this case. Although the swimming pool was attractive, it was no more dangerous than any other artificial body of impounded water of the same depth. The facts of this case do not bring it within the provisions of Section 339, supra.
Regrettable as it is that the ten year old boy lost his life, we are unable to find any facts in this case which would justify us to depart from the long established rule that water hazards are not attractive nuisances.
For the reasons stated, this case should be, and is, affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, PATTERSON, and ROBERTSON, JJ., concur.